UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        *Plaintiff,*

    *vs.*                             Case No. 24-cr-164

PETER BRAUN,

        *Defendant.*

## BRAUN'S REPLY: MOTION TO SUPPRESS

The private search doctrine does not apply in this case because Agent Koehler's search of Braun's files—and Agent Koehler did review Braun's files, as opposed to some other files—exceeded and expanded upon the reviews conducted by Google and Microsoft. Because that was a warrantless search, Agent Koehler's observations must be stricken from the affidavit in support of the warrant to search Braun's home. Once that information is removed, the affidavit fails to establish probable cause. Finally, the government has failed to show that the good faith doctrine applies. For these reasons, the Court should grant Braun's motion.

### I.    Warrantless Search

As Braun's motion sets forth, there is a circuit split on the question of whether police effect a search when they view images attached to a NCMEC report that had not yet been viewed by an electronic service provider (ESP). The Second and Ninth Circuits have ruled that they do, and that a warrant is necessary. *United States v. Maher*, 120 F.4th

297, 309 (2d Cir. 2024); *United States v. Holmes*, 121 F. 4th 727 (9th Cir. 2024). The Fifth and Sixth Circuits have ruled that they don't. *See United States v. Miller*, 982 F.3d 412 (6th Cir. 2020); *United States v. Reddick*, 900 F.3d 636, 639 (5th Cir. 2018). Braun has argued that the Court should follow the reasoning of the Second and Ninth Circuits. The government, not surprisingly, believes the Court should follow the Fifth and Sixth Circuits.

Accordingly, the government's primary argument is that the private search doctrine justifies Koehler's warrantless search. Here, "[t]he government bears the burden to prove Agent [Koehler's] warrantless search was justified by the private search exception to the Fourth Amendment's warrant requirement." *United States v. Wilson*, 13 F.4th 961, 971 (9th Cir. 2021). That means that the government must demonstrate that Koehler's search only "repeat[ed] a private search already conducted by a third party but [did] not expand on it." *United States v. Bebris*, 4 F. 4th 551, 560 (7th Cir. 2021). It has not done so.

Rather, the government's brief makes clear that Agent Koehler's actions went beyond the actions of Google and Microsoft. Those companies electronically scanned files to obtain hash values and then compared them to a database of hash values. Those actions did "not convey any information about the contents of the file." *United States v. Keith*, 980 F. Supp. 2d 33, 43 (D. Mass. 2013); *see also Maher*, 120 F.4th at 306 ("a computer's discovery of a hash match in the Maher file revealed nothing, either to Google or to those with whom it shared the match, about what in particular the image depicted (or even what the original file image depicted)."). Rather, they simply indicated a match to a file "that

2

someone, sometime, identified as containing child pornography." *Keith,* 980 F. Supp. 2d at 43.

Agent Koehler, on the other hand, opened the files and viewed their contents. He did this "to obtain specific information about the…file image—which was more than police already had been told by Google or NCMEC." *Maher*, 120 F.4th at 306. Simply put, "matching the hash value of a file to a stored hash value is not the virtual equivalent of viewing the contents of the file." *Keith,* 980 F. Supp. 2d at 43 ("a match alone indicts a file as contraband but cannot alone convict it."). Koehler's "examination did not simply replicate Google's own algorithmic search of the…file for a hash match, [it] expanded on it in a way not employed by Google [and Microsoft], *i.e.*, human visual inspection, which allowed the police to learn more than Google [and Microsoft] had learned." *Maher*, 120 F.4th at 306.

The government adds a wrinkle to its argument, claiming that Agent Koehler did not view the files that Braun uploaded and were attached to the NCMEC report, but rather that he viewed the identical hash matched images provided by NCMEC that were "already saved in law enforcement databases." Dkt. 27 at 12. Therefore, this argument goes, Braun is vicariously asserting a Fourth Amendment right, which the law forbids. *Id*. This claim is not supported by the record and is inconsistent with the defense's understanding of how the CyberTipline operates and law enforcement investigates child

*Federal Defender Services of Wisconsin, Inc.*

pornography cases generally. Federal statutes,[1] Google's Policies,[2] the NCMEC reports from this investigation,[3] and Agent Koehler's reports[4] all seem to demonstrate that Agent Koehler viewed the image files that Braun uploaded. This makes sense, as it's how all other CyberTipline reports and subsequent law enforcement investigations proceed.[5] Google and Microsoft identified files as potential child pornography. They sent those files to NCMEC. NCMEC attached those files to the report that it forwarded to law enforcement. And those are the files that Agent Koehler viewed. The defense is aware of no other instance in which law enforcement received a file from NCMEC other than the file that an ESP forwarded to the CyberTipline. Without any report or affidavit to establish this fact, the Court should disregard the claim, or at a minimum, schedule an evidentiary hearing.

Finally, the government also claims, in a single sentence, that Braun does not have a privacy interest in his files after they were removed from his account per procedures that he agreed to. As an initial matter, this argument is undeveloped and should be

---

[1] *See* 18 U.S.C. § 2258A, which requires ESPs to send a report to NCMEC if they identify violations of child pornography laws to include the files at issue and then requires NCMEC to forward that report to law enforcement.

[2] Google, *Transparency Report: Google's efforts to combat online child sexual abuse material*; available at: https://transparencyreport.google.com/child-sexual-abuse-material/reporting (last accessed March 7, 2025).

[3] Exhibits 1-4.

[4] *See* Exhibit 6 ("Koehler reviewed the [CyberTips] … and made the following observations…. Both reported images from CTs 791024044 and 79124047 appeared to be the same/visually similar.")

[5] *See e.g., Maher*, 120 F. 4th at 301 (explaining how the law enforcement viewed the image that Maher uploaded, not the "original file" that was determined to be child pornography); *See also* Steven Alexander, *Understanding NCMEC CyberTipline Reports*, HGExperts.com, *available at*: https://www.hgexperts.com/expert-witness-articles/understanding-ncmec-cybertipline-reports-53197 (last accessed Dec. 9, 2024) ("The images or videos associated with the CyberTipline Report are provided to the appropriate agency along with the report").

*Federal Defender Services of Wisconsin, Inc.*

ignored. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."). But more to the point, the search here was not conducted by Google or Microsoft, but by Agent Koehler. And whatever Google or Microsoft's terms of service may provide, they do "not extinguish [Braun's] reasonable expectation of privacy in that content as against the government." *Maher*, 120 F.4th at 308; *see also United States v. Coyne*, 387 F. Supp. 3d 387, 395–96 (D. Vt. 2018) (rejecting the government's contention that the user agreements for Yahoo and Microsoft, among others, vitiated any expectation of privacy despite language in the contracts); *Matter of Search of Encrypted Data Provided by Nat'l Ctr. For Missing & Exploited Children*, 2021 WL 2100997, at *4 (D.D.C. May 22, 2021) (defendant had a reasonable expectation of privacy in his Google email account even though Google's terms of service "prohibit[ed] customers from] using [its] platform to violate the law").

Agent Koehler conducted a warrantless search when he opened Braun's email files without a warrant. That warrants their suppression and derivative use to further law enforcement's investigation.

## II. Affidavit did not establish probable cause

The government next argues that even if Agent Koehler's viewing of the images was a search, it's of no consequence because the affidavit otherwise established probable cause. To be sure, "a search warrant based partly on tainted evidence will still support a search if the untainted information, considered by itself, establishes probable cause for

the warrant to issue." *United States v. Thompson*, 811 F.3d 944, 948 (7th Cir. 2016) (internal citations omitted). And here, the government argues, because Microsoft, Google, and NCMEC "each found hash matches in their respective databases that matched previously identified images of child pornography," those "hash value matches alone [are] sufficient to establish probable cause," Dkt. 27 at 13 (quoting *United States v. Feldman*, 2014 WL 7653617 at *10 (E.D. Wis. July 7, 2014).

The primary problem with this argument is that while law enforcement's investigation might have established that the ESPs and NCMEC identified a matched hash value to known child pornography, Agent Koehler did not include any of that information in the affidavit. And because a probable cause analysis is limited to the four corners of an affidavit, those investigative facts cannot contribute to an assessment of the affidavit's probable cause. *See e.g., United States v. Clayton*, No. 21-CR-70, 2022 WL 203414, at *15 (E.D. Wis. Jan. 24, 2022), *report and recommendation adopted,* No. 21-CR-70, 2022 WL 1315939 (E.D. Wis. May 3, 2022); *United States v. McMillian*, 786 F.3d 630, 639 (7th Cir. 2015).

Contrary to the government's brief, Koehler's affidavit does not establish that Google, Microsoft, or NCMEC found hash matches in their respective databases that matched previously identified images of child pornography. The affidavit provides no information about matching hash values at all or even explains what a hash value is. *United States v. Shelton*, 418 F. App'x 514, 517 (7th Cir. 2011). It simply indicates that Koehler was investigating a NCMEC report. Ex. 5 at ¶ 31. Beyond Koehler's description

*Federal Defender Services*
*of Wisconsin, Inc.*

of the images in the files, the balance of the affidavit ventures to establish a nexus to Braun. See Ex. 5 at ¶¶ 33, 35. That includes the fact that in 2015, Braun's then 15-year-old son reported to a teacher that he observed Braun chatting with young girls online. That fact alone, of course, could not possibly establish probable cause. It might be a relevant fact of corroboration. But here, if the affidavit is considered without reference to Koehler's illegal search, there is nothing for that information to corroborate.

This is simply not a case where "[e]ven without the evidence of the first search, the affidavit [still] presented the magistrate judge with sufficient evidence to merit the issuance of this warrant." *United States v. Oakley*, 944 F.2d 384, 387 (7th Cir. 1991). Rather, when the tainted information (i.e., Agent Koehler's description of his search of the image files) is removed from the affidavit, the balance of the information in the affidavit fails to establish probable cause.

## III. The Good Faith Exception Does Not Apply

The government claims that good faith doctrine applies because "it would have been reasonable for an officer to believe…that the Fourth Amendment allowed the officer to open and view hash-matched files after a private party determined that the defendant's files matched known" child pornography. Dkt. 27 at 15. That is so, the government argues, because suppression is not appropriate "when police act with an objectively reasonable good-faith belief that their conduct is lawful." *Id.* (citing *Davis v. United States*, 564 U.S. 229, 238 (2011)).

*Federal Defender Services
of Wisconsin, Inc.*

But this misstates the holding of *Davis*. *Davis* explicitly "h[e]ld that when the police conduct a search in objectively reasonable reliance *on binding appellate precedent*, the exclusionary rule does not apply." 564 U.S. at 249-50 (emphasis added). Here, there is no "binding appellate precedent" authorizing Agent Koehler's search. The law was unsettled at best.[6] Though decisions in the Fifth and Sixth Circuits authorized a warrantless search of an image with a matched hash value, the Tenth Circuit, in a very thorough opinion written by then Judge Gorsuch, highlighted the murkiness of this issue. *See United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016). That opinion even called it an "[i]nteresting question…but one [the court didn't] have to resolve in [that particular] case." *Id.* at 1306. Then Judge Gorsuch's comments—in 2016, years before Agent Koehler's search—highlight the novelty of this issue and undermine any claim that it was objectively reasonable to assume a warrant was not needed to search the files.

*Ackerman* also makes clear that the murkiness of this "interesting" issue notwithstanding, police "will not struggle at all to obtain warrants to open emails when the facts in hand suggest…that a crime against a child has taken place." *Id.* at 1309. In other words, if the evidence in the investigation was "more than sufficient to establish probable cause," it would have been very easy for Agent Koehler to obtain a warrant to

---

[6] *See e.g.*, Rachel Haney, *Addressing the Increase of Online Child Sexual Abuse in the Pandemic*, 38 NO. 6 GPSolo 77, 78 (Nov/Dec. 2021) (Noting that post-*Ackerman:* "Courts are generally in agreement that where a person at the company views the contents of a file concurrently with or immediately prior to making a report to NCMEC, both NCMEC and law enforcement may view the contents of the file without expanding on the scope of the provider's private search. However, there is no clear guidance on whether the government (or NCMEC) can view files detected by hash-matching technology but *not* viewed by a human at the time of reporting without a warrant." (emphasis in original)).

review the images. He chose not to. And that precludes application of the good faith doctrine.

The government also claims that Agent Koehler's later decision to get a warrant to search Braun's residence somehow underscores that the good faith doctrine applies to his earlier illegal search. This just isn't so. A later warrant doesn't undo an earlier Fourth Amendment violation. The Supreme Court has long rejected this logic. *See Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392 (1929) ("The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all."). Indeed, the Seventh Circuit has also long forbidden the use of "evidence obtained pursuant to a warrant … if the warrant was secured from a judicial officer through the use of illegally acquired information." *United States v. Oakley*, 944 F. 2d 384, 386 (7th Cir. 1991); *see also United States v. Thompson*, 811 F.3d 944 (noting that absent untainted evidence otherwise establishing probable cause, evidence is "inadmissible if discovered while executing a search warrant that rests principally on information obtained illegally."); *United States v. Shelton*, 997 F.3d 749, 770 (7th Cir. May 14, 2021). Agent Koehler's use of illegally obtained information to obtain a search warrant does not permit the application of the good faith exception.

## IV.    Conclusion

Microsoft and Google identified files as potential child pornography and alerted NCMEC. Both entities flagged for law enforcement that they had not reviewed the files

at issue. Despite that, DCI Special Agent Aaron Koehler examined the files without a warrant. Because he exceeded the scope of Google and Microsoft's inspections, the private search doctrine does not apply. In sum, this was a warrantless search, and its fruits, including the search warrant for Braun's residence, must be suppressed.

Dated at Milwaukee, Wisconsin, this 7th day of March, 2025.

Respectfully submitted,

*/s/  Joshua D. Uller*
Joshua D. Uller, WI Bar #1055173
Federal Defender Services
   of Wisconsin, Inc.
411 E. Wisconsin Avenue – Suite 2310
Milwaukee, WI  53202
Tel.  (414) 221-9900
Email:  joshua_uller@fd.org

*Counsel for Defendant,* Peter Braun