UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

   v.                                                    Case No. 24-CR-164

PETER J. BRAUN,

          Defendant.

## GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE COURT'S REPORT AND RECOMMENDATION ON THE DEFENDANT'S MOTION TO SUPPRESS

Magistrate Judge Duffin's March 18, 2025, Report and Recommendation (R&R) denying Defendant's motion to suppress appropriately applied the law and should be adopted by this Court. Because Defendant's objections to that R&R (ECF No. 44) mostly reiterate the arguments made in his opening motion, the Government hereby incorporates its response to that motion (ECF No. 27) rather than burdening this Court with further repetition of the same arguments and points of law. As those briefs explain, the defendant's claim fails for three independent reasons: (1) no Fourth Amendment violation occurred here; (2) even if it did, the warrant contained sufficient probable cause excluding the challenged content; and (3) even if this court disagrees with the first two points, the good-faith exception to the exclusionary rule applies.

The Government submits this response to Defendant's objections only to address the specific arguments raised therein, and, as relevant, in the magistrate's recommendation.

    I.      **Factual Clarification**

While the magistrate judge correctly recommended denial of the motion to suppress, the report and recommendation errs on one potentially important factual matter. As the Government

explained, SA Koehler did not view the defendant's *own* copies of the hash-matched CSAM images. Instead, he viewed identical (hash-matched) images that were already in law-enforcement databases. The magistrate judge deemed that fact "inconsistent with the record and with the operation of CyberTips," Dkt. 39 at 9, but the record citations in the magistrate judge's opinion do not support his conclusion. Instead, those record citations confirm the undisputed point that NCMEC *itself* did not view these images before making its referral. *Id.* The record citations have no bearing on which images SA Koehler clicked on: the defendant's copies, or copies of the images that already existed in law-enforcement databases. The answer is the latter.

This point is potentially dispositive. The defendant himself had no cognizable privacy interest in the images already saved in law enforcement databases, as "Fourth Amendment rights are personal rights which … may not be vicariously asserted." *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)). That being said, for the independent reasons explained in the Government submissions to the magistrate and herein, the defendant's motion fails regardless of how this factual point is resolved.

II. **There Is No Fourth Amendment Violation**.

The Fourth Amendment's protection against unreasonable searches and seizures applies only to intrusions by government actors, not to searches conducted by private parties. *See Burdeau v. McDowell*, 256 U.S. 465, 475 (1921). In *United States v. Jacobsen*, 466 U.S. 109 (1984), the Supreme Court held that a government search that follows a private search of the same effects comports with the Fourth Amendment so long as it does not exceed the scope of the private search. *See also, e.g., United States v. Bebris*, 4 F.4th 551, 560 (7th Cir. 2021). That "private search" doctrine resolves the Fourth Amendment issue raised here.

Like the defendant, the Government incorporates its prior briefing on this question. The new case cited by the defendant, *United States v. Jeffery*, 2024 WL 4866686 (4th Cir. Nov. 24, 2024), is an unpublished case that had no occasion to address the question presented here, because in that case Microsoft itself conducted an "eyes-on review" of the images. *Id.* at *3. In the Government's view, the logic of *Jacobsen* and the conclusions of the Fifth and Sixth Circuits indicate that the private-search doctrine applies here. *See United States v. Miller*, 982 F.3d 412 (6th Cir. 2020); *United States v. Reddick*, 900 F.3d 636 (5th Cir. 2018). The magistrate judge tentatively reached the same conclusion: Even "[a]ssuming Koehler viewed Braun's copy of the images, doing so was still likely not a 'search' because it was virtually certain that the files contained child pornography, in which Braun has no legitimate privacy interest." Dkt. 39, at 10 (citing *Jacobsen*, 466 U.S. at 125).

As the Government also argued below, the search warrant was supported by probable cause even if the description of the images was omitted, because the hash-value matching is so probative. The magistrate judge appropriately recognized what this very court has found by concluding that the images' matching hash values to those of known child pornography alone are so reliable that they establish probable cause to believe that contraband or evidence of a crime was likely to be found in Braun's residence. *See United States v. Feldman,* No. 13-CR-155, 2014 WL 7653617, at *10, (E.D. Wis. July 7, 2014). (ECF No. 39, p.10.)

III. **The Good Faith Exception Applies**.

The magistrate judge also correctly concluded that even if the affidavit was not supported by probable cause to search Braun's residence, the good faith exception applies. (ECF No. 39, p. 11.)

The exclusionary rule is a "'judicially created remedy'" that is "designed to deter police misconduct." *United States v. Leon*, 468 U.S. 897, 906, 916 (1984) (citation omitted). The rule does not apply "where [an] officer's conduct is objectively reasonable" because suppression "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." *Id.* at 919. Instead, to justify suppression, "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system" for the exclusion of probative evidence. *Herring v. United States*, 555 U.S. 135, 144 (2009). "[E]vidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Leon*, 468 U.S. at 919 (citation omitted).

In this case, it would have been reasonable for an officer to believe--like the unanimous Fifth and Sixth Circuit panels--that the Fourth Amendment allowed the officer to open and view hash-matched files after a private party determined that the defendant's files matched known CSAM. Indeed, when the warrant in question was signed—March 2, 2021—neither the Supreme Court nor *any* appellate court in the country had held that a warrant was required for the government to visually examine a hash-matched image in a file not opened by the service provider. Instead, the only appellate decisions on the books were *Reddick* (2018) and *Miller* (2020), which fully supported SA Koehler's actions, in addition to *Jacobsen* itself. As the Second Circuit held—in the *Maher* case on which the defendant relies, although he does not note this aspect of its holding—"[i]n such circumstances, we think it was objectively reasonable for [the investigator] to think that she did not need a warrant to visually examine" the hash-matched files. *Maher*, 120 F.4th at 321.

4

At the very least, the Fifth and Sixth Circuit's decisions confirm that this was an "objectively reasonable" application of *Jacobsen*. Suppression is not appropriate "when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful." *Davis v. United States*, 564 U.S. 229, 238 (2011); (quoting *Leon*, 468 U.S. at 909). An officer can hardly be faulted for following the same interpretation of binding Supreme Court precedent as every other circuit to consider the question had adopted at the time.

That SA Koehler then applied for a warrant to obtain the evidence actually at issue here only underscores that the good-faith doctrine applies. When a challenged search occurs pursuant to an invalid warrant, the fruits of that search may be admitted if the officers who executed it relied upon the warrant in good faith. *United States v. Yarber*, 915 F.3d 1103, 1106 (7th Cir. 2019); *United States v. Orozco*, 576 F.3d 745, 750 (7th Cir. 2009). An officer's decision to obtain a warrant creates a presumption that the officer acted in good faith. *Id.*; *United States v. Calligan*, 8 F.4th 499, 504 (7th Cir. 2021). The defendant can rebut that presumption by showing that the state court judge "wholly abandoned his judicial role," or otherwise failed in his duty to "perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police," or that the officer submitted an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Koerth*, 312 F.3d 862, 868 (7th Cir. 2002).

The defendant points to no such evidence here, and there is none. As described above, the warrant was supported by ample probable cause. And when SA Koehler applied for the warrant, he disclosed all the relevant circumstances that supported probable cause—*including* his viewing of the hash-matched images. A state prosecutor then approved the warrant and a state judge signed it. *See United States v. Rees*, 957 F.3d 761, 771 (7th Cir. 2020) (consulting with the

5

prosecutor prior to applying for a search warrant provides additional evidence of the officer's objective good faith). A reasonable officer would rely on those determinations that the Fourth Amendment permitted the warrant. *See Leon*, 468 U.S. at 918-921. As a result, none of the evidence seized pursuant to the warrant should be suppressed.

IV. **Conclusion.**

For the aforementioned reasons and the reasons in the Government's initial response brief. (ECF No.27) the Government respectfully requests that this Court deny the motion to suppress.

Dated at Milwaukee, Wisconsin, this 8th day of May 2025.

Respectfully submitted,

RICHARD G. FROHLING
Acting United States Attorney

By: */s/ Megan J. Paulson*
MEGAN J. PAULSON
Assistant United States Attorney
Office of the United States Attorney
Eastern District of Wisconsin
517 East Wisconsin Avenue, Room 530
Milwaukee, Wisconsin 53202
Telephone: (414) 297-1700
Fax: (414) 297-1738